LOUISIANA FARMERS' PROTECTIVE
UNION, Inc., v. GREAT ATLANTIC &
PACIFIC TEA CO. OF AMERICA, Inc.,
et al.

No. L. R. 126.

District Court, E. D. Arkansas, W. D.
Feb. 9, 1940.

486

James H. Morrison, of Hammond, La., David P. Siegel, of New York City, Lee Cazort, Jr., of Little Rock, Ark., Gordon Goodbĕe, of New Orleans, La., and Joseph A. Sims, and C. Paul Phelps, both of Hammond, La., for plaintiff.

Caruthers Ewing, of New York City, Owens, Ehrman & McHaney, of Little Rock, Ark., and Logan Morrill, of Cincinnati, Ohio, for defendants Great Atlantic & Pacific Tea Co. of America, Inc., the Atlantic Commission Co., Inc., and the Kroger Grocer & Baking Co., Inc.

Clark & Rice, of Dallas, Tex., and House, Moses & Holmes, of Little Rock, Ark., for defendant Safeway Stores, Inc.

LEMLEY, District Judge.

This case comes on for hearing upon the joint motions of the defendants, the Great Atlantic & Pacific Tea Company of America, Inc., and the Atlantic Commission Company, Inc. (hereinafter referred to as A. & P. and the Atlantic, respectively), and the separate motion of the defendant, Kroger Grocer & Baking Company, Inc. (hereinafter called Kroger), for a bill of particulars, and upon the separate motion of the defendant, Safeway Stores, Inc. (hereinafter designated as Safeway) for a bill of particulars and more definite statement; all of which motions are addressed to the amended complaint of the plaintiff, Louisiana Farmers' Protective Union, Inc.

In a stipulation of the parties, filed some time back, it was agreed that the defendants might file motions to strike and to sever after the court had ruled upon the aforesaid motions for bills of particulars, and, therefore, other possible questions with reference to the amended complaint are not now presented. A more orderly procedure would have resulted had the defendants filed their several motions simultaneously. The motions could then have been consolidated for hearing as is contemplated under the rules. ·

This suit was originally brought as a class action by the Louisiana Farmers' Protective Union, Inc., and one Ellis M. Jenkins, an alleged member of said association, as plaintiffs; and motions for a bill of particulars, to strike, to sever, to dismiss, and other motions addressed to ·the original complaint were filed by the several defendants, but before any of these motions were acted upon by the court the plaintiff, Louisiana Farmers' Protective Union, Inc., filed an amended complaint in which its co-plaintiff, Ellis M. Jenkins, was dropped as a party plaintiff, and in which it alleges that all of its members have duly assigned unto it their alleged causes of action as set out in the original and amended complaints.

The amended complaint in question sets up three alleged causes of action, the first based upon the Sherman Anti-Trust Act, U. S. Code Annotated, Title 15, Section 1 et seq.; the second, upon the Clayton Act, Title 15, Section 15 et seq.; and the third, upon the Robinson-Patman Act, Title 15, Section 13 et seq.

In its said amended complaint the plaintiff alleges, among other things, the following:

That it is a non-profit, cooperative corporation, composed of each and every strawberry grower in the state of Louisiana who ships strawberries in interstate commerce (alleged in the original complaint to be 8,000 in number), and functions as the marketing agent for its members in the marketing and distribution of strawberries; that each and every member of its said association has duly assigned and transferred unto the plaintiff certain alleged causes of action and all their right, title, and interest in and to all the damages to their business which they have sustained by and through the alleged unlawful acts of the defendants set forth in said complaint;

That defendants are engaged in the retail grocery business as the owners and operators of retail grocery stores located throughout the United States, certain of the defendants being buying subsidiaries of others; that the defendant, A. & P., owns,

operates, and controls retail chain stores to the number of 13,300 in 35 states, that the defendant, Kroger, has a chain of 3,990 retail stores in the United States, and the defendant, Safeway, a chain of over 3,020 retail stores in the United States; that the defendants, through their retail stores under their proper names as shown in the complaint, and operating under various other names, but which are wholly controlled and dominated by the defendants, handled in the years 1937 and 1938 approximately 25% of plaintiff's strawberries at retail through their stores operated throughout the United States;

That in the years 1937 and 1938 the defendants combined and conspired with the object and intent of stifling competition and monopolizing the retail distribution of food products in the United States, particularly strawberries; that in pursuance of said alleged plan the defendants have employed the merchandising technique of using "loss leaders" on certain products, and more particularly plaintiff's strawberries, to destroy the business of competitors, and in that way control the sole outlet for strawberries and other food products; that the result of said conspiracy was to permit said defendants to dictate, not only the prices to be paid by them for plaintiff's strawberries, but to create a monopoly unto themselves for the exclusive distribution of all strawberries and agricultural and food-stuff commodities at retail in the United States; that a further result of said conspiracy was to enable the defendants to control the retail distribution of food products, and more particularly strawberries, in such a manner as would vest the defendants with arbitrary power to dictate prices, not only to the ultimate consumer, but to the producer as well; all in alleged violation of the Sherman Act;

That the defendants have resorted to the merchandising technique of using "loss leaders" of certain products, and more particularly of plaintiff's members' strawberries, with the object and intent of destroying competition, and in that way to control the sole outlet for strawberries and other food products; that the use of strawberries as "loss leaders" by the defendants resulted in a price depreciation of the entire strawberry market and an elimination of competition in the strawberry field; that the defendants, having purchased from the plaintiff's members the strawberries mentioned in the complaint, and being so engaged in commerce throughout the United States, and in the sale of said strawberries therein, and in the course of such commerce, "discriminated in price and caused a discrimination in price between the different purchasers of said strawberries throughout the United States who purchased from retail stores throughout the United States and in stores other than the retail stores so conducted, owned, operated, and controlled by the defendants, which strawberries were sold for use, consumption and resale within the United States," and the effect of such discrimination was to substantially eliminate competition and tended to create a monopoly in the sale of strawberries; that after the defendants so purchased the said strawberries, they caused the same to be sold at prices below the purchase price thereof, and discriminated against the purchasers of other and independent retail stores throughout the United States, which said other retail stores were unable to meet the unfair, unlawful, and sacrificial prices below cost, at which the defendants caused the said strawberries to be sold in their retail stores, and that the effect of this discrimination was to substantially lessen the competition in the sale of strawberries and tended to create a monopoly over the strawberry industry, and over the products of the plaintiff; all in alleged violation of the Clayton Act;

That the defendants have resorted to the merchandising technique of using "loss leaders" as a means of price discrimination on certain products, and more particularly on plaintiff's strawberries, with the object and intent of destroying competition and in that way controlling the sole outlet for plaintiff's strawberries, and have sold and contracted to sell said strawberries at unreasonably low prices and below the purchase prices, for the purpose of destroying competition and eliminating competitors in the various parts of the United States, and practically throughout the United States; in alleged violation of the Robinson-Patman Act;

That during the season of 1937 the plaintiff, through its members, the strawberry farmers of Louisiana, shipped in interstate commerce 3,400 cars of strawberries, or 2,502,400 crates of strawberries, for which said members received an average of $1.57 per crate, and that during the season of 1938, through its members, the strawberry farmers of Louisiana shipped in interstate commerce 2,500 cars of strawberries, or

1,840,000 crates, for which said members received an average of $1.97 per crate; that had it not been for the alleged illegal acts of the defendants said strawberry farmers would have received, during the 1937 season, $6,005,760 for their strawberries, or an average of $2.40 per crate, and during the 1938 season, $4,324,000, an average of $2.35 per crate, and that on account of said illegal acts, the plaintiff's said members, the strawberry farmers, have suffered damage and loss of $2,796,192; and plaintiff prays for judgment in the amount of $8,328,976 (including treble damages) plus interest, costs, and a reasonable attorneys' fee.

The motions under consideration are practically identical, and for the purpose of this opinion references will be made mainly to the joint motion of the A. & P. and the Atlantic, and the rulings thereon will apply to similar requests contained in the other motions.

The said motion of A. & P. and the Atlantic requests the following items:

In Paragraph 1, that plaintiff be required to state with more particularity how the alleged claims of its members were assigned to it, whether orally or in writing; and to aver the names and addresses of the strawberry growers whose claims it is alleged have been assigned to it, together with the date of each of said alleged assignments; and to furnish copies of all such assignments, if in writing;

In Paragraphs 2 and 3, for particulars as to the number of cars sold on each particular day and date during the strawberry seasons of 1937 and 1938, and the grade and price received on each such sale, together with the name of the purchaser of each car or sale of less than a car;

In Paragraph 4, for particulars as to the method in which such sales were made, and as to whether the strawberry farmers of Louisiana sell their strawberries to plaintiff and it in turn sells them to purchasers, or, whether it is a selling agency for the individual growers; and that plaintiff be required to state the exact manner in which the strawberry growers transact their business with or through the plaintiff, and to allege the terms of the contract, if any, between said corporation and its members;

In Paragraph 5, that plaintiff be required to aver the exact numbers of stores, together with the names and addresses thereof, which it claims are dominated by each of the defendants;

In Paragraph 6, that the plaintiff be required to aver with more particularity the meaning of the term "loss leaders"; the exact date and place at which it claims each of the defendants sold strawberries as "loss leaders"; and the exact cost price of the strawberries sold in each instance; and the exact manner in which it is claimed the use of strawberries as "loss leaders" would destroy the business of competitors; and to set out the names and addresses of the competitors whom it alleges the defendants are seeking to destroy;

In Paragraph 7, that plaintiff be required to aver the exact time and place when the alleged unlawful agreement or conspiracy was entered into; and the names of the officers or agents of each of the defendants who entered into the alleged conspiracy;

In Paragraphs 8 and 9, that the plaintiff be required to aver with particularity from whom it would have received an average price of $2.40 per crate for its strawberries during the year 1937, and an average price of $2.35 per crate for its strawberries during the year 1938, but for the alleged illegal acts of the defendants; and to aver the exact names and addresses of the persons from whom it would have received the prices in question; and the exact act of the defendants, or each of them, which the plaintiff claims prevented it from selling its strawberries at a higher price to such persons;

In Paragraphs 10 and 11, and in connection with the alleged violation of the Clayton Act, that plaintiff be required to state with particularity the exact date and place of each sale which it claims caused or resulted in unlawful discrimination in price between purchasers; and to aver the names and addresses of the stores, other than those conducted by the defendants, which it claims were affected by the alleged illegal conduct of the defendants; and the names and addresses of the "other retail stores" which it alleges were unable to meet the alleged unfair and unlawful prices at which it is claimed the defendants sold strawberries;

In Paragraph 12, that plaintiff be required to set out the names and addresses of the competitors whom it claims the defendants are seeking to destroy; and to enumerate the "other food products", the sole outlet of which the plaintiff alleges the defendants

are seeking to control; and the manner, time and place of each act which the plaintiff will rely upon as evidencing such intention;

In Paragraph 13, that plaintiff be required to name the agricultural and food-stuff commodities, other than strawberries, upon which it alleges the defendants have dictated prices; and the exact time, place, and manner in which it is claimed the defendants have dictated the price on each of said agricultural and food-stuff commodities;

In Paragraph 14, for particulars as to the manner in which plaintiff contends the defendants had been able to control the retail distribution of food products; and the time, place, and manner in which the defendants have controlled, or been able to control, the retail distribution of food products, and to enumerate and set forth such products;

In Paragraph 15, that the plaintiff be required to aver with more particularity the meaning of the phrase "loss leaders of certain products" as used in the complaint in connection with the allegation that the defendants are seeking to destroy competition and control the outlet for strawberries and other food products; and to set out the exact date and place at which it is alleged each of the defendants sold certain products as "loss leaders", with an enumeration of such other products which it claims were so sold by the defendants, and each of them; together with the exact cost price of each of such other products, and the exact manner in which it claims such sales would destroy the business of defendants' competitors.

In connection with all of the paragraphs of the motion, the defendants state that "because of the tremendous volume of the transactions involved and the meager and misleading character of the averments of the complaint" they cannot prepare their responsive pleadings and properly prepare for trial unless and until a bill of particulars is filed by the plaintiff, as prayed for in said motion.

Rule 12 (e) of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, upon which the motion is based, provides: "Before responding to a pleading * * * a party may move for a more definite statement or for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial. The motion shall point out the defects complained of and the details desired. * * * A bill of particulars becomes a part of the pleading which it supplements."

In each instance, the defendants have pointed out the defects complained of and the details desired, as required by the rule.

There are certain principles which are applicable generally to the requests above set forth:

■ The granting or refusal of a motion for a bill of particulars rests in the sound discretion of the court. Moore's Federal Practice (1938), Vol. 1, page 656; Simpkin's Federal Practice (1938), page 280; Harper v. Harper, 4 Cir., 252 F. 39; Alaska S.S. Co. v. Katzeek, 9 Cir., 16 F.2d 210; McKenna et al. v. United States Lines, Inc., D.C., 26 F.Supp. 558.

■ Matters of evidence are not required to be stated in a bill of particulars. Garfield v. Paris, 96 U.S. 557, 24 L.Ed. 821; Sierocinski v. E. I. Du Pont de Nemours & Co., 3 Cir., 103 F.2d 843; Universal Oil Products Co. v. Skelly Oil Co., D.C., 12 F.2d 271; Ballard Oil Terminal Corp. v. Mexican Petroleum Corp., 1 Cir., 28 F.2d 91; Massachusetts Bonding & Ins. Co. v. Harrisburg Trust Co., D.C., 27 F.Supp. 987; Jessup & Moore Paper Co. v. West Virginia Pulp & Paper Co., D.C., 25 F.Supp. 598; Laugharn v. Zimmelman et al., D.C., 28 F.Supp. 348; Modern Food Process Co., Inc. v. Chester Packing & Provision Co., Inc., D.C., 29 F.Supp. 405.

■ A bill of particulars will not ordinarily be granted as to matters that should be more peculiarly within the knowledge of the moving party than that of his adversary. Shyrock v. S. P. Calkins & Co., 4 Cir., 248 F. 649, 652; Sure-Fit Products Co. v. Med-Vogue Corp., D.C., 28 F.Supp. 489.

■ The scope of a bill of particulars should ordinarily be limited to such matters as are required to enable the moving party properly to prepare his responsive pleadings and generally to prepare for trial; and particular information needed in preparation for trial should be procured by means of discovery under the rules on interrogatories, depositions, and discovery. American La France-Foamite Corp. v. American Oil Co., D.C., 25 F.Supp. 386, 387; Fried v. Warner Bros. Circuit Management Corp. et al., D.C., 26 F.Supp. 603; Southern Grocery Stores, Inc. v. Zoller Brewing

Co., D.C., 26 F.Supp. 858; Tully v. Howard et al., D.C., 27 F.Supp. 6; Brinley v. Lewis, D.C., 27 F.Supp. 313; Adams v. Hendel, D.C., 28 F.Supp. 317; Alabama Independent Service Station Ass'n, Inc., et al. v. Shell Petroleum Corp., et al., D. C., 28 F.Supp. 386, 387; Shultz v. Manufacturers & Traders Trust Co. et al., D. C., 29 F.Supp. 38; Moog v. Warner Bros. Pictures, Inc., D.C., 29 F.Supp. 479; Pearson v. Hershey Creamery Co., D.C., 30 F.Supp. 82.

We shall endeavor to apply these general principles, and also certain particular principles believed to be applicable to the pleading under consideration, to the requests above set forth:

(1) With reference to the request, made in Paragraph 1 of the motion, for particulars relative to the allegation of the plaintiff that each and every member of its association (composed of each and every strawberry grower in the state of Louisiana who ships strawberries in interstate commerce) has assigned his claim to it, in which paragraph it is asked that plaintiff be required to give the names and addresses of the assignors, to state how their claims were assigned to it, and to give certain other definite information with reference to said alleged assignments, it will be noted that the complaint contains no allegation, other than that of assignment, which would justify the maintenance of the suit by the plaintiff association in its own name, there being no allegation to the effect that its charter gives it the power to enforce the property rights of its members. In this connection, Rule 17 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides, with certain exceptions not applicable here, that every action shall be prosecuted in the name of the real party in interest. It was held in Alabama Independent Service Station Association, Inc. et al., v. Shell Petroleum Corporation et al., D.C., 28 F.Supp. 386, 390, wherein a trade association brought a suit on behalf of its members for treble damages for violation of the anti-trust laws, that the association was not a real party in interest under Rule 17 (a), supra, with capacity to sue to enforce the separate rights of its individual members. In that decision the court said:

"The question is raised as to the capacity of the Alabama Independent Service Station Association, Inc., to maintain the action as a real party in interest or otherwise. * * *

"The association corporation named shows no legal right to receive compensation for the damages of its members, nor does it have such a property right as an injunction in this case will protect. Its charter power to act for the benefit of its members to prevent violations of law does not give it capacity to maintain a suit of this kind. * * *

"The capacity of the association corporation, which is plaintiff here, to sue generally is not questioned, but its capacity to enforce the separate property rights of its individual members seems unfounded in any authority or law.,

"The Alabama Independent Service Station Association, Inc., will be stricken as a plaintiff. We may add that the remaining plaintiffs, as operators of gasoline service stations, may properly remain as plaintiffs, and may sue on behalf of all of the similarly situated parties described in the complaint. See Rule 23(a) (3), Rules of Civil Procedure [28 U.S.C.A. following section 723c]; Moore's Federal Practice, Vol. 2, pp. 2241 et seq. However, for the recovery of damages, each member of the class must intervene to assert and prove such damages to himself."

Plaintiff in its original complaint apparently assumed the position that it had capacity to sue on behalf of its individual members, and no allegations with reference to assignments were made therein. The defendants at the time filed motions questioning its capacity to sue, but before these motions were submitted the plaintiff filed its amended complaint setting up the alleged assignments.

Since the capacity of the plaintiff to sue is based solely upon the alleged assignments, it is elementary that the nature of its title should be made to appear for the purpose of showing its right to maintain the action; 6 C.J.S., Assignments, § 137b; and, in this connection, the names of the parties to whom the alleged causes of action accrued should be averred; 6 C.J.S., Assignments, § 137c; Sonnenfeld Millinery Co. v. Uhri, Mo.App., 83 S.W.2d 168. The allegation that each and every member of its association has assigned his claim to the plaintiff is entirely too general, and certainly so for the purpose of this motion. The plaintiff will be required to give the names of its assignors.

Information as to the names of the strawberry growers and their addresses, as well, will doubtless be required to enable the defendants to prepare generally for trial, and, therefore, the addresses of the growers should also be given at this time. Many of the requests contained in the motion for a bill of particulars will be denied, as hereinafter stated, on the ground that the desired information can be obtained through depositions and other means of discovery, and it may be that the defendants will find it necessary in this connection to take the depositions of certain of the individual strawberry growers, and until their names and addresses are disclosed, the defendants cannot generally prepare for trial.

With respect to the request that the plaintiff be required to state how the alleged claims of its members were assigned to it, whether orally or in writing, and to give the date of each of said alleged assignments; this information could doubtless be obtained through means of discovery, but, since the right of the plaintiff to bring this suit, so far as the pleadings now disclose, is based solely upon the alleged assignments, the court feels that full data with reference to the assignments should be given at this time, so that in the inception of the suit all questions with reference thereto may be settled, if possible. Therefore, the plaintiff will be required to state with more particularity when the claims were assigned to it, and whether orally or in writing, and to give the date of each of said alleged assignments. In Johnson & Gould v. Joseph Schlitz Brewing Co. et al., D. C. Tenn., Sept. 1, 1939, 28 F.Supp. 650, Judge Darr, on a motion for a bill of particulars, required the plaintiff to set out whether the contract sued on was in writing, with whom it was made, and with such details as were called for in the motion.

Relative to requiring the plaintiff to furnish copies of all such assignments as may be in writing, this request will be granted as to such of the assignments as are not identical in form; if identical in form, one copy will suffice with appropriate data as regards the others.

(2) In regard to the requests made in Paragraphs 2 and 3 of the motion, for particulars as to the numbers of cars of strawberries sold on each particular day and date during the seasons of 1937 and 1938, the grade and price received on each sale, together with the name of the purchaser of each car or sale of less than a car; this information can be obtained through means of discovery, and the motion in that respect is denied.

(3) Likewise, with reference to the requests made in Paragraph 4 of the motion, relative to the method by which the sales were made, and the dealings between the plaintiff and the individual growers, the information can doubtless be obtained through means of discovery, and the motion in this particular is denied.

(4) In connection with the requests in Paragraph 5 of the motion, that the plaintiff be required to aver the exact number of stores, and give the names and addresses thereof, which it claims are dominated by each of the defendants, it is alleged in the complaint that the defendants in their own names through their retail stores, and through other stores operated under various other names which are wholly controlled and dominated by the defendants, handled in the years 1937 and 1938, approximately 25% of plaintiff's strawberries.

In the court's opinion, this is information that is needed by the defendants in order to prepare generally for trial, and to prevent surprise in the event that the plaintiff introduces proof with reference to stores claimed to be dominated by the defendants but operated under other names; and this request will be granted.

(5) Several requests are incorporated in Paragraph 6 of the defendants' motion:

(a) Relative to the request that the plaintiff be required to aver with more particularity the meaning of the term "loss leaders", the court has been unable to find a definition of that term in any of the law books which he has examined, nor does it appear to have been defined in any of the standard dictionaries. Counsel on both sides stated in oral argument that they likewise had failed to find a definition of the term, although it is one that is in more or less common use in the mercantile world. The motion in this respect will be granted.

(b) The request that the plaintiff be required to aver the exact dates and places at which it claims each of the defendants sold strawberries as "loss leaders" presents serious difficulties.

A similar request is made in Paragraph 13 wherein it is asked that the plaintiff be required to state the exact times, places,

and manner in which it claims the defendants have dictated the prices on agricultural and food-stuff commodities; and also in Paragraph 14 wherein it is asked that the plaintiff be required to state the times, places, and manner in which it is claimed that the defendants have controlled or been able to control the retail distribution of food products.

The situation is in a sense comparable to the one before the Supreme Court in Swift & Co. v. United States, 196 U.S. 375, 395, 396, 25 S.Ct. 276, 279, 491 L.Ed. 518, in the opinion in which Mr. Justice Holmes used the following language: "The general objection is urged that the bill does not set forth sufficient definite or specific facts. This objection is serious, but it seems to us inherent in the nature of the case. The scheme alleged is so vast that it presents a new problem in pleading. If, as we must assume, the scheme is entertained, it is, of course, contrary to the very words of the statute. Its size makes the violation of the law more conspicuous, and yet the same thing makes it impossible to fasten the principal fact to a certain time and place. The elements, too, are so numerous and shifting, even the constituent parts alleged are, and from their nature must be, so extensive in time and space, that something of the same impossibility applies to them. The law has been upheld, and therefore we are bound to enforce it notwithstanding these difficulties."

On the one hand, it is argued that unless the motion in this respect is granted, the defendants cannot properly prepare for trial, and in this connection that the element of surprise must be taken into consideration, especially in view of the allegations in the complaint to the effect that the defendant, A. & P., operates 13,300 stores in 35 states, and the defendant, Kroger, 3,990 stores, and the defendant, Safeway, 3,020 stores; and the defendants insist that the language quoted from the Swift case, supra, was applied to an equity suit, whereas the action here is at law to be tried before a jury, and that the same principle, therefore, does not apply. They cite the following language from the case of Harry Prochaska, Inc. v. Consolidated Lithographing Corp., D.C., 51 F.2d 362, 363: "These two causes, however, are actions for large sums of money brought at law and triable by a jury and, consequently, the question of surprise has to be taken into consideration, and the defendants

should be adequately advised of such of the plaintiffs' claims as are wholly within plaintiffs' knowledge, for, in a jury trial, the somewhat sedate procedure of an equity case under the Sherman Anti-Trust Act is not possible."

The element of surprise must of course be considered, but to require the plaintiff to set out its cause of complaint with such exactness and precision in stating times and places, might be to nullify the beneficial purposes of the statute. In actions to recover damages for alleged unlawful conspiracy, owing to the complicated nature of the case, and the numerous elements which may enter into such conspiracy, the plaintiff should be given liberal latitude in his pleadings. Ware-Kramer Tobacco Co. v. American Tobacco Co., C.C., 178 F. 117.

See also Buckeye Powder Co. v. E. I. Du Pont de Nemours Powder Co., D.C., 196 F. 514, 522, wherein the court said: "To require the party injured by the conspiracy denounced by the Anti-Trust Act to set out his cause of complaint with that degree of nicety and precision in stating times, places, methods, and persons, as is required in the ordinary common-law pleading, would be to nullify the beneficent purpose of the statute. If the pleader sets out with reasonable certainty and definiteness the causes which resulted to his injury, and connects the defendant therewith, and from such allegations the defendant is apprised of the character of the accusation, and it is not apparent that he will be prejudiced in making his defense, a declaration will not be struck out, even though it may contain some statements of a general and indefinite character, and shall fail to disclose the exact times and places when some of the alleged steps in furtherance of the conspiracy were carried on, or the names of all the persons employed therein. If as to such general statements the defendant deems himself entitled to more specific information, he may apply for a bill of particulars in regard thereto; but the right of the plaintiff to have his cause judicially inquired into is not to be made dependent upon his ability to state with exactness each step or each of the several parts of a step which either from the results presumably took place or which he alleges took place. He is not required to allege more than is necessary to be proven, nor is he to be unduly limited in making his allegations of steps taken because at the

time of making them he is not in possession of the specific data which at the trial he will find necessary to establish such step, unless such step or steps by the very framework of his pleadings are essential to his cause of action, and it is apparent that without more definite data the defendant will be prejudiced in his defense in meeting such allegation."

Moreover, Rule 12(e), supra, should not be so construed as to permit either party to put the other to such expense as to make the seeking of justice a profitless thing. As was stated in E. I. DuPont de Nemours & Co. v. DuPont Textile Mills, Inc., D.C., 26 F.Supp. 236: "The purpose of the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and particularly of Rule 12(e) is to expedite and simplify proceedings in the Federal Courts, and it is the aim of the various courts to so interpret them as to work substantial justice in all cases. But it is not the purpose of Rule 12(e), nor should it be construed to permit either party to put the other to such expense and delay as to make the seeking of justice a profitless thing,"

In the words of Mr. Justice Holmes in Swift & Co. v. United States, supra, we must steer between these opposite difficulties as best we can.

The plaintiff will not be required to give the exact times and places at which it claims each of the defendants sold straw-berries as "loss leaders" below cost, but, in order to enable the defendants to prepare generally for trial, the plaintiff will be required to give the names of the towns or cities at which it will contend at the trial the defendants, and each of them, sold strawberries below cost, together with the year during the strawberry season of which it will contend that the defendants, and each of them, sold strawberries below cost. Since the strawberry season is of short duration, the year should suffice as to date.

It is a matter of common knowledge that the defendants have many stores in certain of the larger cities of the United States, and doubtless further particulars would be of great value to the defendants, but the court does not feel that under the circumstances of this case the plaintiff should be required to go further than above indicated.

(c) The plaintiff will not be required to aver with more particularity the exact cost price of the strawberries sold in each instance, as further requested in Paragraph 6 of the motion. This is information that should be within the peculiar knowledge of the defendants.

(d) Upon oral argument of the request in Paragraph 6 of the motion that plaintiff be required to state the exact manner in which it is claimed the use of strawberries as "loss leaders" would destroy the business of competitors, the defendants contended that the plaintiff had entirely failed in its complaint to set out the nature of the injury claimed or the facts constituting the attempt to monopolize, and that such being the case the complaint could not be held a sufficient statement of a cause of action to constitute a basis for recovery, and cited certain authorities to sustain their contention; and in this connection they also argued with reference to the alleged conspiracy, that the complaint failed to describe definitely the combination relied upon and the acts done which resulted in damage to its assignors, stating that the plaintiff had in reality alleged mere conclusions, framed in the words of the several statutes; and they further argued, and with particular reference to a request contained in Safeway's motion, for particulars relative to the amount of damages claimed, and the lumping thereof, that plaintiff had failed to allege facts upon which damages measurable in dollars might be based, and on that account had failed to state a claim upon which relief can be granted; and for the reasons stated the defendants asked that plaintiff make its complaint more definite and certain in the particulars referred to.

All of these arguments are addressed to the sufficiency of the complaint in regard to stating a cause of action; and counsel for the defendants announced at the time that they would very shortly file a motion to dismiss, setting up these contentions. The defendants can, of course, move to dismiss for such insufficiency at this time; Moore's Federal Practice (1938), Vol. 1, p. 628; and, in view of their pending action in this regard, the court will defer passing upon the specific requests above referred to until the hearing on the motion to dismiss is had. The purpose of a bill of particulars is to furnish the moving party with information needed to enable him to prepare his responsive pleadings and to prepare generally for trial, and a motion therefor should not be used as a forerunner of, or in the nature

of a substitute for, a motion to dismiss. Questions as to the sufficiency of the complaint in the respect indicated should be raised directly and not by indirection.

■ (e) As to the request for the names and addresses of the competitors whom the plaintiff alleges the defendants are seeking to destroy, which request is reiterated in Paragraph 12 of the motion, it appears that the defendants are engaged in the retail grocery business and it is evident that their competitors are retail grocerymen in the towns in which they do business. The motion in this respect will be denied.

■ (6) It is requested in Paragraph 7 of the motion that plaintiff be required to aver the exact time and place when the alleged unlawful agreement or conspiracy was entered into, and the names of the officers or agents of each of the defendants who entered into the alleged conspiracy. Conspiracies are seldom capable of exact proof as to time and place, and also as to the names of the conspirators. Frequently one attempting to prove an unlawful agreement, or conspiracy, must needs resort to circumstantial evidence, or adduce facts through which, by inference, the conspiracy will be established. Eastern States Retail Lumber Dealers Association v. United States, 234 U.S. 601, 612, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788. The plaintiff will not be required to aver the time and place. However, the court is of the opinion that the plaintiff should be required to give the names of the alleged conspirators if their names are known to the plaintiff, and if not known, to so state. As was said in O-So-Ezy Mop Co. v. Channell Chemical Co., D.C., 230 F. 469, 470: "While in this case the plaintiff may be assumed to know what, if any, derogatory statements concerning the defendant it really made, it does not necessarily know what statements of this nature the defendant may claim were made, who made them, or, consequently, whether the person charged with having made them was an authorized representative of the plaintiff."

(7) A ruling on the requests made in Paragraphs 8 and 9 of the motion will be deferred until the hearing on the proposed motion to dismiss, hereinbefore mentioned, and for the reasons stated in paragraph numbered (5 (d) of this memorandum.

(8) As to the requests contained in Paragraphs 10 and 11 of the motion, in connection with the alleged violation of the Clayton Act, that plaintiff be required to state the exact date and place of each sale which it claims caused, or resulted in, unlawful discrimination in price between purchasers; the information required of the plaintiff under the ruling made in paragraph (5 (b) of this memorandum should suffice.

■ Regarding the request that the plaintiff be required to aver the names and addresses of the stores, other than those conducted by the defendants, which it claims were affected by the alleged illegal conduct of the defendants, and the names and addresses of the "other retail stores" which it alleges were unable to meet the alleged unfair and unlawful prices at which it is claimed the defendants sold strawberries; the plaintiff will not be required to give the names of any such stores, but will be required to name the towns or cities in which it will contend at the trial that stores other than those conducted by the defendants were affected by the alleged illegal acts of the defendants.

(9) Relative to the request, in Paragraph 12 of the motion, that plaintiff be required to enumerate with more particularity the "other food products," the sole outlet of which the plaintiff alleges the defendants are seeking to control, and the manner, time, and place of each act which the plaintiff will rely upon as evidencing such intention, and also relative to the requests made in Paragraphs 13, 14, and 15 of the motion, for additional particulars as to plaintiff's allegations with respect to food products other than strawberries: Similar allegations in this regard were made in plaintiff's original complaint, and the defendants filed a motion to strike the same from the complaint, but before the motion was submitted, plaintiff filed herein its said amended complaint. As heretofore stated, the parties have stipulated that the defendants may file a motion to strike, addressed to the amended complaint, after the court has ruled upon the aforesaid motions for a bill of particulars, and it is anticipated that the defendants may again question the allegations with reference to food products other than strawberries. Therefore, rulings on the requests made in connection with such allegations will be deferred until the court has passed upon the motion to strike.

■ (10) The motion of Safeway for a bill of particulars and more definite statement contains a request not set up in the joint motion of A. & P. and the Atlantic and not hereinbefore referred to, namely,

that plaintiff show its charter power to act herein for its members. This request will be granted. All questions as to the right and power of the plaintiff to maintain this suit should if possible be settled in the inception thereof.

An order based upon the foregoing memorandum may be presented by the defendants and will be settled upon notice, at which hearing the court will fix a time for compliance therewith.