**LOUISIANA FARMERS PROTECTIVE UNION, Inc. v. GREAT ATLANTIC & PACIFIC TEA CO. OF AMERICA, Inc., et al.**

Civ. No. L. R.–126.

United States District Court
E. D. Arkansas, Western Division.

Feb. 12, 1949.

James H. Morrison, of Hammond, La., and Cameron C. McCann, of New Orleans, La., for plaintiff.

E. L. McHaney, Jr., 'Owens, Ehrman & McHaney, W. R. Roddy, and House, Moses & Holmes, all of Little Rock, Ark., and Pat Coon and Clark, Coon, Holt & Fisher, all of Dallas, for defendants.

JOHN E. MILLER, District Judge.

The original complaint in this cause was filed on April 20, 1939. From that date until October 25, 1948, the proceedings in the trial court were before Honorable Harry J. Lemley, United States District Judge for the Eastern and Western Districts of Arkansas, to whom the case was originally assigned.

On October 25, 1948, Judge Lemley filed a "Certificate of Disqualification," the concluding paragraph of which reads:

"By reason of the actions of the plaintiff acting through its aforesaid counsel, and of its said attorneys, Messrs. McCann and Morrison (Mr. Cameron C. McCann and Hon. James H. Morrison, attorneys of record for plaintiff), and in particular Mr. McCann, as set out and referred to herein, I feel that I cannot in good conscience further sit in this cause. In my mind, the same have rendered it impossible for me to conduct any further proceedings in the case with impartiality and without bias toward the plaintiff. I therefore recuse myself from any further consideration of this litigation." (Matter in parenthesis supplied.)

Thereafter, on January 19, 1949, the Honorable Archibald K. Gardner, Chief Judge, United States Court of Appeals, Eighth Circuit, designated and appointed the writer to sit in the Eastern District of Arkansas for the purpose of disposing of this case. The assignment was filed in the office of the Clerk on January 20, 1940.

Pending at the time of Judge Lemley's withdrawal from the case was a motion or request for default judgment filed by the plaintiff on September 21, 1948. A hearing was held on said motion (September 22, 23, and 24, 1948) and the motion was taken under advisement, awaiting preparation and filing of briefs by respective counsel. That is the question now before the Court.

Because of the voluminous record in this case it has been necessary to study the entire record and files to ascertain what has transpired during the ten years this case has been pending before Judge Lemley, and at the risk of drawing out this opinion, it seems necessary that a chronological outline of the material proceedings be set forth herein.

The history of the case from April 20, 1939, the date of the filing of the first complaint, through December 28, 1942, the date of the filing of the mandate of the Court of Appeals, will be found in two opinions by the District Court, 31 F.Supp. 483 and 40 F.Supp. 897, and one opinion by the Court of Appeals for the Eighth Circuit, 131 F.2d 419.

However, in order that this memorandum may be coherent in and of itself, the following brief summary is inserted.

In substance the complaint, which in form is in three counts, charges a violation of various sections of the national antitrust laws (count 1—sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2; count 2—section 2 of the Clayton Act, 15 U.S.C.A. § 13; count 3—section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a), the same allegations furnishing the basis for the alleged violation in each count.

The trial court on October 1, 1941, dismissed the complaint without leave to amend, upon motion by defendants to dismiss for failure to state a claim upon which relief could be granted, being of the opinion that the complaint as then amended and as amplified by bills of particulars should be dismissed on two grounds: (1) Because plaintiffs had not " * * * alleged facts showing damage to the business or property of its assignors in an amount susceptible of expression in figures, proximately resulting from the alleged illegal acts;" and (2) because " * * * the necessary causal relationship between the alleged violations of the statutes and the alleged damage to plaintiff's assignors, does not appear."

The Court of Appeals in reversing, 131 F.2d 419, 421, said:

"Taking the complaint in its entirety, the gravamen of appellant's charge is that appellees, buyers of Louisiana strawberries, agreed with each other to control the price of berries by driving out of the market competing purchasers. This alleged conspiracy was made effective by selling to the consumer at retail prices either below cost or at prices so low as to eliminate competitors of appellees in the retail market, thus compelling other distributors of berries at wholesale who were buyers of Louisiana strawberries in interstate commerce

for sale to competing retailers, to retire from the Louisiana market or to purchase only at the depreciated price fixed by the appellees; and by these actions the members of the appellant union sustained the damages claimed."

The Court also said that since the plaintiff was suing as assignee of 8,795 separate claims it was necessary that plaintiff allege the damage, computed upon actual and not average prices, to the business or property of each assignor proximately resulting from the alleged unlawful acts of defendants, yet, this defect in the complaint went only to the amount of damage, and the trial court should have granted plaintiff a reasonable time within which to amend rather than dismiss without leave to amend. As to the second ground of dismissal the Court of Appeals observed that the conclusions drawn by the trial court in connection with that ground were of a character usually to be drawn from the evidence after a hearing and not from the pleadings, and as such, are within the exclusive province of the jury to be drawn after evidence is adduced.

The mandate of the Court of Appeals, filed December 28, 1942, read as follows:

"And it is further ordered by this Court that this cause, be, and the same is hereby, remanded to the said District Court with directions to grant the appellant a reasonable time in which to amend the complaint by setting out the amount of damage claimed to have been received by each of the appellant's assignors and the basis upon which the amount was computed, and for further proceedings in conformity with the opinion of this Court filed herein."

On December 18, 1942, the attorneys for defendants filed notice that they would apply on January 12, 1943, to the District Judge for an order on the mandate granting plaintiffs a definite, reasonable time within which to comply with said mandate.

Plaintiff filed motion on January 11, 1943, requesting the Court to fix a date not earlier than May 12, 1943, as a time limit for amending the complaint, giving as grounds therefor that plaintiff's attorney, Hon. James H. Morrison, was compelled to go to Washington to serve in Congress; that plaintiff's attorney, Joseph Sims, had assumed duties of District Attorney at Hammond, Louisiana; that the above named attorneys were the only attorneys for plaintiff familiar with the almost 9,000 assignors; and pointing out that a huge volume of work was necessary in order to comply with the mandate. A hearing was held on January 12, 1943, at which time local counsel for plaintiff filed a motion praying that the hearing be continued until February 8, 1943, and that plaintiff be allowed to amend its motion of January 11, 1943, so as to fix a date certain as the definite date determining a reasonable time within which to amend. On that date, January 12, 1943, an order was filed granting the continuance and granting 15 days within which to amend said motion of January 11, 1943.

On February 1, 1943, plaintiff filed an amended motion requesting until June 12, 1943, within which to amend its complaint pursuant to the mandate. Said motion was granted on February 8, 1943, and an order to that effect was entered on February 9, 1943.

Plaintiff filed an additional motion on June 7, 1943, requesting that the time within which to comply with the mandate be extended until December 31, 1943. The reasons set forth in the original motion of January 11, 1943, were reasserted. An order granting the motion was entered on June 14, 1943.

A motion to enlarge the time to file amended complaint was filed by the plaintiff on January 3, 1944, with attached affidavits of Mr. Morrison and Earl E. Spencer, acting secretary of plaintiff, requesting an extension until April 1, 1944. To this motion the defendants filed a response on January 10, 1944, alleging that the motion was filed after the expiration of the time allowed by the previous order and that the motion and attached affidavits failed to show "excusable neglect" for failure to file within that time. An amendment to the response was filed on January 15, 1944, requesting a hearing on the matter. An order was entered January 28, 1944, allowing the motion for a continuance to be filed, and setting a hearing on said motion for March 6, 1944. Order was entered March 6, 1944, reciting that hearing on motion

for enlargement of time be adjourned until May 1, 1944, because of the illness of plaintiff's witness, Earl E. Spencer, and directing that the deposition of said Earl E. Spencer be taken at Hammond, Louisiana. The deposition was taken April 17, 1944, and filed May 8, 1944. While the motion was still pending, and on June 12, 1944, plaintiff filed its first amended complaint pursuant to mandate, together with statements setting forth the alleged losses suffered by 5001 assignors during the year 1937 and 3176 assignors during the year 1938. A hearing on the motion for an enlargement of time was held on June 12, 1944, at which time the Court found that the first amendment to the complaint was not "properly filed," but that it, together with the deposition of Earl E. Spencer, was sufficient evidence of the good faith of plaintiff, and accordingly plaintiff would be allowed 18 months from that date within which to comply with the mandate. An order to this effect was entered on the same date, June 12, 1944.

During the week of December 10, 1945, 21 files containing exhibits to plaintiff's complaint were filed with the Clerk; on January 9, 1946, 9 additional files containing exhibits were filed with the Clerk; and on January 28, 1946, the remaining exhibits to plaintiff's complaint were filed.

Defendants filed motion on January 8, 1946, for four months additional time in which to plead, which motion was granted by order entered January 10, 1946.

On May 6, 1946, defendants filed two motions: (1) Motion to Strike the exhibits to plaintiff's complaint filed after the expiration of the 18 months allowed for filing same by the order of June 18, 1944; and (2) Motion to Dismiss the complaint as amended for failure to state a claim upon which relief could be granted. Plaintiff, by local counsel, filed motion on June 11, 1946, praying that the hearing on the motion to strike, set for June 25, 1946, be continued until some date subsequent to August 1, 1946. An order was entered June 13, 1946, granting the motion for continuance to October 22, 1946. At the hearing on the motion to strike on October 22, 1946, the motion was overruled, and the respective attorneys were directed to file briefs on defendants' motion to dismiss. Apparently the Court, sua sponte, granted a total of seven months for the preparation and filing of said briefs and an order to this effect was entered October 23, 1946.

In their brief, filed January 20, 1947, defendants took the position that the issues raised by the motion to dismiss were: "(1) Whether the assignments to the plaintiff are valid, and (2) whether the plaintiff has complied with the mandate of the Circuit Court of Appeals." In support of (1) above, it was urged that the purported oral assignments to plaintiff were invalid under Louisiana law. As to (2) above, defendants contended that plaintiff's allegation in its first amended complaint pursuant to the mandate that plaintiff would prove that defendants' actions caused the losses suffered by plaintiff's assignors was insufficient. They argued that the causal connection between the alleged "loss leader sales" and plaintiff's alleged damage is not set forth in the pleadings. Furthermore, defendants argued that by the amendment all plaintiff had done was to allege the actual price received by each assignor and add a sum equivalent to 83¢ per crate in 1937 and 38¢ per crate in 1938; that plaintiff had completely ignored the Court of Appeals' mandate which required that the basis of computing damage be shown, and that plaintiff should have set forth the actual loss to each assignor and not his average loss.

Plaintiff in its brief on the motion to dismiss, filed April 15, 1947, took the position that the questions raised by this motion (as well as the motion to strike filed at the same time and previously overruled, October 23, 1946) had been decided and were in effect res adjudicata. Plaintiff argued that under Rules 7(b) (1), 12(g), and 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the defendants were required: "(1) to 'state with particularity the grounds' for each motion and the 'relief or order sought'; (2) to consolidate and file all motions at one time and were prohibited from filing any subsequent motion; and (3) to abandon all objections not stated 'with particularity' in its motions." That the question of whether the complaint as amended complied with the mandate could

only be raised by a motion to strike under 12(e); that defendants have waived this objection or defense by failing to assert it "with particularity" in their consolidated motions (motion to strike and motion to dismiss filed on May 6, 1946); and that by reason thereof there was nothing legally before the Court and said motion to dismiss should have been stricken as redundant and irrelevant. However, reserving its rights under the Rules, plaintiff answered the argument that the amendment did not comply with the mandate. Plaintiff contended that it was impossible, and not required by law, to assert with exactness the loss of profit, and that such loss must of necessity be estimated, and it is for the jury to decide whether the alleged acts of defendants produced the loss of profits and to fix a reasonable estimate of the loss based on the evidence presented.

In their reply brief, filed May 15, 1947, defendants asserted that since plaintiff had amended the complaint all defenses by way of motion were open to defendants to the same extent as if the amended complaint were an entirely new action. Furthermore defendants' construed the opinion of the Court of Appeals, 131 F.2d 419, to mean that that Court agreed with the trial Court that the complaint should be dismissed because no adequate basis of damage had been pleaded, and that the Court of Appeals and trial Court differed merely on the ground that leave to amend should have been granted by the trial Court. In this regard defendants urged that there must be some allegation of damages definitely attributable to the alleged wrong, (admitting that if this be done it is not necessary that the prayer for damages be reduced to a mathematical certainty) and that such an allegation is not present in the amendment.

The motion to dismiss (filed May 6, 1946) came on for a hearing on August 11, 1947. A transcript of this hearing has been prepared by the official court reporter and appears in the file of the case. Certain statements by the trial Court and counsel appearing in the transcript bear directly on the merits of the motion for a default judgment. Before the oral arguments began, Mr. McCann, one of the attorneys for plaintiff, made the following statement:

"Mr. McCann: I at this time, at the opening of the argument on the motion to dismiss this case for failure to state a claim, now object to any further hearing on this matter in view of the fact that the matter is barred under the Rules of Civil Procedure, as is fully set out in plaintiff's memorandum or brief in this case."

At the conclusion of arguments on August 11, 1947, the trial Court announced that he would give his decision on the motion to dismiss the following morning, August 12, 1947. On the morning of the 12th only local counsel appeared for plaintiff and advised the Court that other counsel, Messrs. McCann and Morrison, for plaintiff had been compelled to return to Louisianna the night before. Thereafter, the trial Court made the following statement:

"The Court: All right. Let the motion to dismiss be overruled.

"I am passing here, of course, only on the motion to dismiss that is before the Court. I don't concur in all of the positions taken by counsel for the plaintiffs in their oral argument yesterday, with reference to res adjudicata. I think here we have a new complaint, a complaint as amended, and it is subject to any motion that an original complaint might be subject to. That is the position that I take on the matter. Of course, I am not passing directly on that until any other motion is presented. I don't know whether there will be any other motion presented.

"Now, what length of time do the defendants desire within which to plead further?"

There followed a discussion between counsel and the Court as to the time which should be granted defendants within which to plead, in which local counsel for plaintiff stated that he was without authority to speak for plaintiff, so by consent of those present the Court continued the hearing on defendants' request for time to plead until September 8, 1947.

On September 8, 1947, the hearing was continued, at which time defendants requested 45 days within which to further plead. In opposition to said request, Mr. McCann, stated:

"Mr. Cameron C. McCann: Your Honor, that's exactly what I anticipated. They

are asking for time to plead. This suit has been in this court I don't know how many years now. The fundamentals of the Rules are that they file an answer, except under unusual circumstances. Now, they are not saying that they want time to answer; it is forty-five days to plead. It was thirty days ago that they urged Your Honor—made the statement that they have already made. The Rules say that from the institution of a proceeding they have twenty days to answer. They want speed and rapidity. We have never wanted any delay. The Court's order required us to go to an infinite amount of work. We never wanted delay. We were required to put on witnesses to show that we needed that time. Thirty days and forty-five days are three months. The Rules say that they have twenty days to answer. They are entitled to twenty days after that, except on some specific showing to Your Honor that they need it." The trial Court reminded Mr. McCann that he had given plaintiff three years within which to amend and stated that a request for 45 days within which to plead was reasonable. An order was entered September 15, 1947, overruling the motion to dismiss and granting defendants forty-five days from September 8, 1947, within which to plead further.

On October 23, 1947, defendants filed two additional motions, a Motion to Strike and a Motion for Additional Bill of Particulars. Briefly, the Motion to Strike requested that certain portions of the amended complaint and the first amended complaint filed pursuant to the mandate of the Court of Appeals in which reference was made to products other than strawberries be stricken, on the ground that such references were inserted for the sole purpose of prejudicing the Court and jury against the defendants; that since the resolution allegedly assigning all claims to plaintiff ended with "for all damages due for strawberries shipped for the years 1937 and 1938 for violation of the anti-trust acts, namely, the Robinson-Patman Act," all parts of the amended complaint with reference to the cause of action under the Sherman Act and the Clayton Act be stricken, since the resolution, by its specific terms, included only claims under the Robinson-Patman Act; and that the word "illegal" be stricken wherever it appears in the amended complaint.

In the Motion for Additional Bill of Particulars defendants request particulars in reference to allegations of damage in the complaint as amended, such as the basis for computing the 83¢ and 38¢ figures, exact names of concerns from whom it would have received the additional price, exact acts of defendants which prevented the sale at such higher figure, and reason why berries could not be sold to other named persons; particulars in reference to allegation of a conspiracy to permit defendants to dictate the price, such as how said conspiracy enabled defendants to dictate prices, manner in which prices were dictated, names of persons to whom prices were dictated, and price so dictated; particulars in reference to allegation that competitive buyers forced out of market, such as who were the buyers that were forced out, whether the market was competitive in those years, 1937 and 1938, prices paid by defendants and others buyers, cause of said differences, amount of berries purchased by defendants and others buyers; plaintiff should be required to allege what prevented it from selling to others; plaintiff should be required to allege facts from which it can logically and legally be inferred that its assignors did sustain damage to their business, and facts from which the extent of their damage can be measured; particulars with reference to those allegations requested to be stricken in the motion to strike filed contemporaneously with motion for additional particulars, such as exact time and place conspiracy entered into, each act upon which plaintiff relies as evidencing such conspiracy, names of officers or agents of each of defendants who entered into the alleged conspiracy together with description of the act or acts alleged to have been committed, food products other than strawberries defendants conspired to monopolize, products used as "loss leaders" and a definition of "loss leaders", names of competitors destroyed by defendants' acts, how and to whom defendants dictated price, food products other than strawberries of which defendants have a monopoly, control at retail, and dictate prices, names of persons to whom defend-

ants dictated prices and the commodity involved, names of competitors defendants have driven out of food commodity markets, with dates and places; exact date plaintiff acquired knowledge of alleged illegal acts of defendants; and that plaintiff furnish defendants with identity of persons to whom assignors of plaintiff sold berries during 1937 and 1938, or in the alternative furnish defendants with original shipping manifests.

A hearing on the above two motions (filed October 23, 1947) was set for January 5, 1948. By telegram dated January 2, 1948, addressed to Judge Lemley and filed of record herein on October 5, 1948, Mr. McCann asserted that these last two motions clearly showed a complete disregard for both the letter and the spirit of the Federal Rules of Civil Procedure, and requested the Court to revoke his order setting said two motions for a hearing, but in the alternative, if such not done, then a continuance was requested. On January 5, 1948, local counsel for plaintiff filed motion requesting continuance of hearing on the last two motions. By order entered January 6, 1948, a continuance was granted until some day convenient to Court and counsel. After the hearing had been set for March 1, 1948, local counsel for plaintiff filed on January 13, 1948, a motion for another continuance, and an order was entered January 17, 1948, continuing the hearing until April 7, 1948. On March 30, 1948, motion for further continuance was filed by local counsel for plaintiff, and by order entered April 6, 1948, the hearing was continued until some day not earlier than July 20, 1948. Hearing was ultimately set, and had, on September 21, 1948. The grounds advanced for the various continuances were the inability of counsel for plaintiff to be present because of the illness of Mr. McCann and the official duties of Congressman Morrison.

On September 21, 1948, plaintiff filed its Motion or Request for Default Judgment, alleging therein that plaintiff is entitled to default judgment because defendants have "failed to plead or otherwise defend as provided by these rules." In said motion plaintiff requested the Court, in the alternative, if it refused to grant judgment by default, to strike out the two motions pending at the time, motion to strike and motion for additional bill of particulars. Defendants countered by filing a motion for production of documents on the same day, September 21, 1948.

A hearing was had on the motions to strike and for additional bill of particulars on September 21, 1948, at the conclusion of which the court announced that both motions would be overruled. Counsel for plaintiff objected to a hearing on any motions until the motion or request of plaintiff for default judgment had been determined, and dictated a reservation of rights under said motion into the record. From September 22, 1948, through September 24, 1948, a hearing was had on plaintiff's motion for a default judgment. The transcript of this hearing, which has been examined by the Court, and which contains approximately 500 pages, reveals that the proceedings had were long, involved, and often violent. In fact the hearing retrograded into charges and counter charges, by innuendo, of bad faith on the part of the attorneys on both sides and the court apparently let the bars down. It seems that the purpose of the hearing was to examine the good faith of counsel for defendants in filing allegedly dilatory motions and following dilatory practices in an effort to draw out the lawsuit with an end in view of forcing plaintiff to abandon it. There was a great amount of testimony (attorneys for both sides were called as witnesses) adduced, over objection by plaintiff, concerning the alleged resolution, or oral assignments of claims to the plaintiff, the attorneys for defendants stating that it was their position that no such resolution was passed and therefore no such oral assignments made. There also appears in the transcript discussion between Court and counsel concerning the correct procedure to be followed in granting defendants additional time to plead, in view of the pendency of the motion for default (these portions of the transcript are the subject, at least in part, of a subsequent pleading filed by plaintiff, hereinafter set out and discussed). In any event at the conclusion of

the hearing the parties were granted time within which to file briefs, and the motion for default was taken under advisement.

The motion for production of documents came on for hearing on September 25, 1948, which motion was granted. An order was entered October 2, 1948, setting forth the documents to be produced, and requiring plaintiff to furnish report in writing within ten days of documents not in its possession, custody or control. This order was made subject to decision on motion for default judgment.

Plaintiff filed Second Application, Request or Motion for Default Judgment on October 4, 1948. Apparently the position of plaintiff in filing this motion was that more than ten days had elapsed since the motion for additional bill of particulars and motion to strike had been overruled on September 21, 1948, and since no answer had been filed, defendants were in default.

On October 5, 1948, a copy of letter to Judge Lemley containing report required by order entered October 2, 1948, was filed.

On October 11, 1948, plaintiff filed transcript of statements made in Hammond, Louisiana, on the occasion of examination of documents by defendants under order of October 2, 1948. Also, on the same day, October 11, 1948, plaintiff filed for record copy of telegram from Mr. McCann to Judge Lemley concerning the preparation of transcript by official court reporter of the September 21 to 25, 1948, hearing; a telegram from John T. Williams, Official Court Reporter, to Mr. McCann concerning said transcript; telegram from Mr. Williams to Mr. McCann concerning same subject; and telegram from Mr. Williams to Mr. McCann concerning same subject.

Plaintiff also filed its memorandum brief in support of motion for default judgment on October 11, 1948, and defendants filed brief in opposition thereto on October 25, 1948.

On October 11, 1948, the Court entered two orders, one reciting the action taken on September 21, 1948, on defendants' motions to strike and for additional bill of particulars, both of which were overruled. The other reads as follows:

"On this 25th day of September, 1948, the above cause comes on to be heard upon the request of the defendants made in open court for an order fixing the time for the filing of an answer herein, the plaintiff being present by its counsel, Honorable James H. Morrison, Honorable E. R. Schowalter, and Honorable Cameron C. McCann, and the defendants being present by their counsel, Honorable Pat Coon, Honorable W. R. Roddy, and Honorable E. L. McHaney, Jr., and the court being well and sufficiently advised, it is ordered, adjudged and decreed that the defendants be and they are hereby given forty-five (45) days from and after this date within which to file an answer herein.

"This order is made without prejudice to the plaintiff upon its motion for default judgment, the court having specifically reserved its ruling on said motion.

"Signed and entered this 11 day of October, 1948.

(S)   Harry J. Lemley

United States District Judge"

On October 12, 1940, defendants filed a response to plaintiff's second motion for default judgment.

Plaintiff, on October 18, filed a pleading entitled "Application Or Request For Confirmation and Rendition of Judgment Pursuant to Defaults and to Correct Record." Apparently plaintiff's purpose in filing this pleading was to have deleted from the record the order signed and entered on October 11, 1948, granting defendants additional time within which to file an answer, plaintiff taking the position that the order is null and void ab initio, having been entered through error or mistake. Plaintiff urges that the last two pages of the transcript covering the September 21 through 25, 1948, hearings are not accurate. On the next to the last page this statement of the Court appears:

"The Court: I am going to make an order, pending this, that they will be given, pending the decision on the motion for default judgment, they will be given forty-five days within which to answer, or plead." As reflected by the transcript, this statement was made by the Court on September 25, 1948, and plaintiff insists that unless the order entered on October 11, 1948, be deleted, it amounts to a prejudging of the.

motion for default judgment and nullifies plaintiff's second application for default, October 4, 1948. On October 21, 1948, defendants filed a Motion to Strike and Partial Response to this pleading. Defendants contend that the transcript accurately reflects what transpired on the morning of September 25, 1948, and that the Court did in fact state that he was going to enter an order extending the time within which to answer.

The answers of defendants, Safeway Stores, Inc., of Nevada and Tri-Way Produce Company were filed November 8, 1948, and of defendants Kroger Grocery and Baking Company, The Great Atlantic & Pacific Tea Company of America and Atlantic Commission Company on November 9, 1948.

On or about December 14, 1948, the plaintiff filed in the Supreme Court of the United States a Motion for Leave to File a Petition for Writ of Mandamus, which was annexed to the Motion, and for a rule nisi and order to Judge Lemley to show cause why a writ of mandamus should not issue against him in accordance with the prayer of the petition. The motion also asked that the Court grant an oral hearing on the petition if the Court felt that such hearing would clarify any matters therein alleged or otherwise assist the Court.

The prayer of the petition annexed to the motion was that a writ of mandamus be issued directing Judge Lemley to recall and strike from the record the certificate of disqualification and to act upon plaintiff's motion or request for a default judgment filed on September 21, 1948, and plaintiff's second application for a default judgment filed October 4, 1948, and to strike from the record the "null and void" order signed and entered October 11, 1948, and to act upon plaintiff's application or request for confirmation and rendition of judgment pursuant to the defaults filed October 18, 1948, and to enter judgment as required by law.

The motion was denied by the Supreme Court of the United States on January 4, 1949, and following such denial the writer was designated as heretofore shown to sit in this case.

There are two other motions in the file, one filed November 3, 1948, by the plaintiff advising the Court that the services and employment of local counsel Honorable Cooper Jacoway, have been terminated by notice to him that his services were no longer desired and that he is no longer authorized to represent the plaintiff.

The other motion was filed by the defendants, Safeway Stores, Inc., of Nevada, and the Tri-Way Produce Co. on February 2, 1949, alleging that both corporations were legally dissolved on December 31, 1942, and asking that the complaint as against them be dismissed and the cause abated.

Both motions will be disposed of by separate orders following the disposition of the motion for default judgment.

The determination of the questions presented by the motions of the plaintiff for default or for default judgment calls for the exercise by the Court of a sound judicial discretion. In Home Owners' Loan Corporation v. Huffman, 8 Cir., 134 F.2d 314, 316, the Court, in defining the term, said it is:

"The power exercised by courts to determine questions to which no strict rule or law is applicable, but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court."

In State of Missouri v. Fidelity & Casualty Co., 8 Cir., 107 F.2d 343, 345, the Court said:

"There is nothing in the rules to uphold plaintiff's contention, while on the other hand Rule 55 provides in effect that defaults to be effective must be applied for and granted by the court. That the granting of a default is discretionary is indicated by Rule 55(c) which authorizes the court to set aside an entry of default on a showing of good cause.

" 'The default of a party to an action is always a harsh measure, and no party should ever be defaulted, unless the grounds upon which such default is authorized are clearly and authoritatively established and are in such clear and certain terms that the party to be defaulted can know, without question, that he is subject to default if he does not act in a certain manner.' Janoske v. Porter, 7 Cir., 64 F.2d 958, 960; 34 C.J. p. 147, § 349."

In the hearings and arguments on the motions filed May 6, 1946, the plaintiff began protesting to the Court that the various motions to strike, to dismiss, and for bills of particulars and additional bills of particulars should not be entertained and that they should be dismissed because in violation of Rule 12 of the Federal Rules of Civil Procedure, but the plaintiff did not file a motion or request for a default judgment until September 21, 1948. During the hearing on the motion to dismiss (August 12, 1947) the presiding judge stated that he did not concur in all of the positions taken by the plaintiff; that he thought that the complaint as amended was in effect a new complaint and as such was subject to any motions that an original complaint might be subject to.

The defendants urge that even though the judge was in error that the Court should not now hold the defendants in default because they relied upon the construction of the status of the pleadings by the then Judge.

The question before the Court is whether in the exercise of a sound judicial discretion, the defendants should be declared in default on September 21, 1948, and on October 4, 1948, and October 18, 1948. The presiding judge did not pass upon the motions of the plaintiff, but in effect disregarded them and continued to hear other motions then being presented by the defendants, notwithstanding the importance of the motion for default.

The Court is not unmindful of the many hearings that were had in this case, nor of the time consumed in continuance granted the plaintiff, the first being the time for filing the various amendments to the complaint after the mandate of the Court of Appeals was filed, and second, the time consumed in continuing the hearings on motion of the plaintiff on the various motions that were filed by the defendants. The Court realizes that time in itself is not important, but here it appears that all parties treated the litigation as a private matter, disregarding entirely the fact that when a controversy between citizens is filed in a court of justice for decision by the court, the controversy ceases to be a private matter and becomes a matter of public business which should be terminated with reasonable dispatch.

The framers of the Constitution of the State of Arkansas in clause 13 of Article 2, Declaration of Rights, said:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, conformable to the laws."

Of course, the fact that the various motions filed by the defendants were overruled after belated hearings should not be accepted by the Court as a ground for granting the motion for default, notwithstanding the attorneys for the defendants seem to have disregarded the purpose of the rules providing for discovery by depositions and requests for admissions, and the presiding judge continued to permit such conduct. It is not contended that the action of the judge in entertaining the motions and not striking them and requiring the defendants to answer was arbitrary. Therefore, the probability that this Court would have pursued a different course does not justify the granting of the motions for default under the facts and conditions that existed, which conditions were created in the first instance by the plaintiff, followed by motions of the defendants that have the earmarks of dilatoriness, but again the disposition of the motions was delayed by continuances requested by plaintiff.

The function of this Court is not that of an appellate court but the situation presented by this record is aptly depicted by the words of the Court of Appeals for the Eighth Circuit in the case of Hartford-Empire Co. v. Obear-Nester Glass Co., 95 F.2d 414, 424, where it said:

"This issue is not whether this court, had it been the trial court, would have exercised this discretion differently, but it is whether the action of the trial court was so clearly wrong that its decision cannot be justified by the situation and circumstances which must, as matter of law, control the exercise of this discretion."

In view of the harshness of the effect of a default, and the conditions and

circumstances that confronted the Court during the time that elapsed from the filing of the mandate of the Court of Appeals to the date of the judge's disqualification, this Court does not believe that justice requires the granting of the motion for default and this is true even though the order of the Court entered on October 11, 1948, in which it granted forty-five days from September 25, 1948, to the defendants to answer is void. The fact that the Court should have determined the motions for default before granting additional time in which to answer has not prejudiced the plaintiff even if it was at that time under the rules technically entitled to judgment by default, and the same is true of the order that was dictated by the Court on September 25, 1948, and entered on Oct. 2, 1948, in which it directed that the plaintiff produce certain documents for inspection by the defendants, since the extra cost that was incurred by the plaintiff in obeying that order can be, and doubtlessly will be, taken into consideration upon the final settlement of the costs of the case.

In reaching this conclusion the Court is not unmindful of the fact that the plaintiff is seeking to recover damages for acts that were alleged to have been committed in 1937 and 1938; that the lapse of the years may seriously handicap the plaintiff in making its proof, and that is particularly true in this case because a great part of the proof will depend upon the recollection of individual strawberry growers who probably have lost interest in the case and whose memories of the events that transpired years ago may not be clear and vivid, but the plaintiff is not without fault for the lapse of time, notwithstanding it has, since the filing of the amendment pursuant to the mandate, been insisting that the defendants file their answer.

A reading of the record is convincing that the judge was exceedingly liberal with the plaintiff and with the defendants in granting every request for additional time and while the plaintiff in oral arguments and in other ways was insisting that the judge should rigidly enforce Rules 12 and 9 of the Federal Rules of Civil Procedure, yet, the plaintiff did not file its motion for default judgment until September 21, 1948,

as hereinbefore set forth. That is the first notice that the Court had of the seriousness of the question of the alleged failure to observe the rules. Even if the judge was in error in his construction of the amended complaint in reference to Rule 12 and the court's right to entertain the motions and though the plaintiff may have been injured by the delay that has occurred since May 6, 1946, yet, it refrained from filing its motion for default until September 21, 1948, and in the meantime, although remonstrating, asked and received continuances of the hearings on the motions that added to the delay in disposing of the motions, now alleged to be illegal, that were before the Court and which had been filed by the defendants. Certainly the plaintiff has suffered no great injury since September 21, 1948, and in view of the record before the Court, it would be an abuse of the Court's judicial discretion to grant the motions for default judgments.

Therefore, an order is being entered today overruling each of said motions and saving the exceptions of the plaintiff.